

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2007

# USA v. Potter

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2956

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Potter" (2007). *2007 Decisions*. Paper 1568.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1568

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO.  05-2956
_____

UNITED STATES OF AMERICA,

v.

IRA POTTER,
Appellant
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim.No. 04-cr-673-2)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
February 16, 2007

Before: SMITH and FISHER, *Circuit Judges* and
DOWD, *District Judge.**

(Filed:  February 27, 2007)

_____

OPINION OF THE COURT
_____

*Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

DOWD, *District Judge*.

# I.  INTRODUCTION

Ira Potter, one of three defendants named in a three count indictment, appeals his conviction and sentence to a term of 210 months.  His conviction on all three counts followed a jury trial during which the two co-defendants, John Ashmore and Naim Hudgins, testified as government witnesses.  The first count charged the crime of conspiracy to commit a Hobbs Act violation; the second count charged a substantive Hobbs Act violation; and the third count charged a violation of 18 U.S.C. § 924(c) (1) and (2).   All three counts related to a single day, February 13, 2004.

On appeal, Potter claims, first, that the evidence was insufficient to justify convictions on each of the counts; second, that the district court committed prejudicial error in limiting the cross-examination of the cooperating defendant Naim Hudgins as to a prior juvenile conviction; third, that the court's jury instructions constituted plain error requiring a new trial; and, fourth, that the sentencing of the defendant was flawed requiring remand for re-sentencing in the event the court does not order a new trial on the issue of guilt.

We find no error and we will affirm.

# II.  SUFFICIENCY OF THE EVIDENCE

The indictment alleged that Cousin Danny's Exotic Haven is a bar and restaurant located in Philadelphia and that it receives liquor and other items through interstate

commerce.  The parties entered into a stipulation as to that allegation.[1]

The government offered testimony that Potter and his co-defendant, Ashmore, had burglarized Cousin Danny's Exotic Haven on February 6, 2004, after it had closed. The burglary included disabling the vehicle of the owner, Daniel Freeman, after he had closed the business.  After Potter and Ashmore followed Freeman as he walked home, they returned to his disabled vehicle, broke into the vehicle, and stole keys and paperwork that included Freeman's home address.  They then returned to Cousin Danny's and, using the stolen keys,[2] entered and stole cash, a computer, camera equipment, and a Smith-Wesson firearm.[3]

One week later, acting on Potter's belief that Freeman was making a lot of money at Cousin Danny's and kept the bar's proceeds in his own home, Potter and Ashmore developed a plan to steal the bar's monies from Freeman's home in Philadelphia.[4]  Potter, Ashmore and Hudgins watched Freeman close the bar and enter his home.  Freeman's home was also the residence of Freeman's sister, Eugenia Freeman, his

---

[1]*See* App. 199.  The stipulated fact follows:

> "The stipulated fact is that Cousin Danny's Exotic Haven is a bar and restaurant located at 320 South 52nd Street Philadelphia, Pennsylvania which receives liquor and other items through interstate commerce."

[2]App. 496-501.

[3]App. 207.

[4]App. 511.

cousin, Andrew Urey, and his cousin's girl friend, Deborah Wormack.[5]

Potter, Ashmore and Hudgins entered the home at approximately 4:30 A.M. Armed with firearms, the defendants entered a third floor bedroom in which Urey and Wormack were sleeping. Both were struck with a wooden baseball bat. Urey testified that the gunmen asked for money from the bar while he was being beaten. After Urey told the men that he did not have any money, the gunmen yelled, "How come you're running a bar and you don't have any money?" At that point, Urey told them that Freeman owned the bar. When questioned as to Freeman's whereabouts, Urey told them that Freeman was in a bedroom across the hall.[6]

The gunmen then forced their way into Freeman's bedroom, while brandishing firearms, and began to beat Freeman, demanding $20,000 from the bar's receipts. Freeman then responded that he did not have $20,000 and one of the men responded, "I know you're not keeping the money at the bar anymore. I know you're bringing it home now. I want $20,000 or I will kill you."[7] The gunmen took two sets of keys from

_____

[5]App. 196.

[6]App. 67-70.

[7]Daniel Freeman's testimony, at App. 217-18, was explicit:

Q.  Now, Mr. Freeman, when these three men entered your bedroom, could you explain to the jury what they did, once they got inside?

A.  When they got in my bedroom -- well, they kicked the door. I went behind my bed. They came down, pulled me up from behind the bed.

4

Freeman, one of which was to the bar. The gunmen departed, but not before restraining all four occupants with duct tape.[8] Freeman, however, was able to free his feet. He ran outside for help, found a police officer and reported what had happened. The police officer reported the situation.[9] Philadelphia police officers went to Cousin Danny's Bar,

>They dragged me up and put me in the -- near the floor, they duct taped my legs, duct taped my hands and duct taped my mouth.
>
>And they started beating me with a baseball bat and asking me for $20,000.00. They want $20,000.00. And I said, but I don't have $20,000.00. What made you think I have $20,000.00?
>
>And the guy said to me, I know you're not keeping the money at the bar any -- any more. I know you're bringing it home now. I want $20,000.00 or I will kill you.
>
>They proceeded to beat me with a baseball bat, hit me on the head, on my back, all over my body with a baseball bat. They wanted $20,000.00.
>
>Q. Mr. Freeman, were you hit with anything else, other than a baseball bat?
>
>A. Yes. They hit me with all the guns they had in their hands, all in my head, they were hitting me in the head with the guns. They all had -- all to my head, they wanted $20,000.00.
>And I said, well, look, I'm not a drug dealer. Why should I have $20,000.00 in my house? They said, we know you've got money, we know you've got money. You're not keeping -- you're not keeping the money at home any longer.
>So, I said, well, the only money I have is at the bar. If you want it, you have to go and get it. And they said, where are the keys? So, I gave them the keys. They said, where's the safe key? I said, upstairs in my desk drawer.

[8]App. 220 and 73.

[9]App. 220-21.

5

found the front door open and Hudgins and Ashmore hiding in the ladies' restroom.[10]

At trial, Freeman testified that, although the three men wore masks, he nevertheless recognized them as customers who came to the bar to play pool.[11]

Both Hudgins and Ashmore testified as government witnesses. They implicated Potter as the person proposing the robbery.[12] Ashmore described the February 6 burglary of Cousin Danny's Bar.[13] Ashmore also indicated that once he and Hudgins were inside the bar after the robbery at the Freeman home on February 13, 2004, he received several telephone calls on his cell phone from Potter.[14] The government produced cell phone records of Ashmore and Potter which showed telephone calls between Ashmore's and Potter's cell phones during the time period that Ashmore was inside the bar.[15]

When the sufficiency of the evidence is challenged on appeal by the convicted appellant, we review the evidence in a light most favorable to the government. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). That evidence clearly supports the proposition that Potter was one of the three men who entered the Freeman residence on February 13, 2004, terrorized the four

---

[10]App. 290-94.

[11]App. 220.

[12]App. 504.

[13]App. 496-503.

[14]App. 528-30.

[15]App. 558-81.

occupants, and demanded monies that related to and constituted the proceeds of Cousin Danny's Bar, and then engaged as a willing participant in the effort to locate and capture the proceeds of the business later in the morning hours of February 13, 2004 when Hudgins and Ashmore were found by the Philadelphia Police hiding in the Bar.[16]

Potter was represented at trial by retained counsel. The sole defense, unaided by any defense testimony, was limited to identity, accompanied by the claim that the prosecution witnesses, including the victims of the home invasion on the morning of February 13, 2004 as well as the cooperating co-defendants Ashmore and Hudgins, were not credible. Potter's retained counsel did not make a Rule 29 motion for acquittal. No argument was advanced to the effect that a Hobbs Act violation, either as to the conspiracy charged in Count One or the substantive Hobbs Act crime charged in Count Two, lacked the necessary interstate commerce connection. Rather, the defendant joined with the government in a stipulation that the business of Cousin Danny's Bar involved interstate commerce.[17]

On appeal, Potter's appellate counsel raises the issue of sufficiency of the evidence solely as to the requisite connection to interstate commerce, which is the linchpin in federal jurisdiction for a Hobbs Act violation.

---

[16]Count 1 of the indictment charging a conspiracy to violate the Hobbs Act by robbery specifically alleges that Cousin Danny's Exotic Haven is a bar and restaurant that receives liquor and other items through interstate commerce and that the three defendants attempted to take the proceeds from Cousin Danny's Exotic Haven (the business) by robbery.

[17]*See* note 1, *supra*.

Potter cites the recent decision in *United States v. Wang*, 222 F.3d 234 (6th Cir. 2000), for the proposition that a robbery of a person in her own home, even where some of the money taken by the defendant Wang constituted proceeds of the victim's business, was too attenuated to establish the Hobbs Act interstate commerce element. We do not disagree with the outcome in *Wang*. However, in the case at hand, Count One, charging a conspiracy to violate the Hobbs Act was clearly directed to the business of Cousin Danny's Bar. The jury certainly had sufficient *evidence* before it to conclude that the goal of the conspirators, including Potter, was to obtain the monies derived from the operation of Cousin Danny's Bar. The facts in this case, viewed in a light most favorable to the prosecution, do not support the attenuated connection which was the hallmark of the *Wang* decision.[18] Rather the purpose of the conspiracy was to obtain the monies derived from the operation of Cousin Danny's Bar. Count Two, the substantive Hobbs Act crime, had as its purpose the theft of the keys to the Bar by means of a violent robbery.

Stated simply, the first and primary issue raised by Potter on appeal as to the sufficiency of the evidence to support the two Hobbs Act violations is without merit.

---

[18]The facts in this case are similar in concept to the decisions in *United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001) and *United States v. Le*, 256 F.3d 1229 (11th Cir. 2001).

### III. Denial of Defense Request to Question Cooperating Defendant Hudgins Concerning Prior Juvenile Adjudication

The district court prevented Potter's counsel from questioning the cooperating co-defendant Naim Hudgins about a prior juvenile adjudication for receiving stolen property. The district court followed Fed. R. Evid. 609(d).[19] Hudgins was questioned about two other criminal convictions, one for drug trafficking and one for possessing a firearm without a license. The government supports the decision of the district court by reference to *Government of Virgin Islands v. Toto*, 529 F.2d 278, 281 (3d Cir. 1976), which held that a conviction for petit larceny was not an example of a crime that could be the subject of cross-examination. The government argues that the crime of receiving stolen property is similar to petit larceny. Rule 609(d) provides considerable discretion to the district court on the issue of permitting impeachment of a witness based on a juvenile adjudication. We elect not to make a definitive ruling on whether receiving stolen property is the type of juvenile adjudication that, as a matter of law, should be the subject of cross-examination because we find that, under any analysis, the refusal of the district court to allow the impeachment, if error, would constitute harmless error on the face of

---

[19]Fed.R.Evid. 609(d) provides:

> **(d) Juvenile adjudications.** Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

9

this record under Fed. R. Crim. P. 52(a).

## IV.  The Challenged Jury Instruction

As earlier indicated, both Potter and the Government stipulated that the business

of Cousin Danny's Bar involved interstate commerce.  Against that background, the

court's jury instructions contain the following references to the interstate commerce that

underpins Hobbs Act violations.

> (1) The defendant, Ira Potter,  is accused of participating in a conspiracy to interfere with interstate commerce by robbery in violation of Section (sic) 18 U.S.C. 1951(a). (App. 667, lines 11-14).

> (2) The criminal conspiracy to commit robbery, that is, the agreement is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws which the law refers to as substantive crimes.  In this case, for example, the substantive crime is the actual interference with interstate commerce by robbery.  (App. 667, lines 18-23).

> (3) The government must prove the defendant and at least one other person knowingly and deliberately arrived at an agreement or understanding that they and, perhaps others would conspire to interfere with interstate commerce by robbery by a means of some common plan or course of action as alleged in Count 1 of the indictment.  (App. 669, lines 4-9).

> (4) Now, members of the jury, now let me turn to Count 2 of the indictment.  Count 2 charges the defendant, Ira Potter--Ira Potter--with interference with interstate commerce by robbery as follows . . . . (App. 674, lines 12-16).

> (5) And that as a result of the defendant's actions, interstate commerce or an item moving in interstate commerce was delayed, obstructed or affected in any way or degree. (App. 675. line 24 - 676, line 1).

> (6) Now, if you decide that the defendant obtained or attempted to

obtain another person's property against his will or her will by the use of threat of force, violence or fear of injury, you must then decide whether this action will affect interstate commerce in any way or degree.

You must determine whether there is an actual or a potential effect on commerce between any two or more states or commerce within one state that goes through any place outside the state.

Commerce means travel, trade, traffic, commerce, transportation or communication among or between the states.

And this is not an issue, because there was a stipulation agreeing that the elements of the state commerce were met. (App. 678, lines 10-23) (emphasis added).[20]

Potter claims that the jury instruction on the effect of the stipulation as to the fact of the interstate commerce aspect of the business of Cousin Danny's Bar requires a reversal of his convictions on all three counts in the Indictment.

Potter relies on *United States v. Mentz,* 840 F.2d 315, 318 (6th Cir. 1988) for the proposition that, where the district court directs a verdict on an element in the offense, the subsequent conviction must be reversed. In *Mentz,* and over the defendant's timely objection, the district court advised the jury, in a bank robbery case, that the element regarding the fact that the monies of the bank were insured by the Federal Deposit Insurance Corporation had been proven. In effect, over the objection of the defendant, the district court directed a verdict on that one element of the charge of bank robbery.

No objection was taken by Potter's counsel to the underlined statement of the district court. Thus, the issue is whether the underlined statement constitutes plain error

---

[20]Earlier in the instruction, the district court directed: "Now, there was also a stipulation of fact which you may accept or reject along with any of the other evidence in this case." (App. 661, lines 16-18).

11

and requires reversal of the convictions. *United States v. Olano*, 507 U.S. 725, 734-35 (1993) and *Johnson v. United States*, 520 U.S. 461, 467 (1997), taken together, teach that the appellant, Potter, has the burden to prove that (1) the court erred; (2) the error was obvious under the law at the time of the review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings.

The *Olano-Johnson* analysis leads to the inevitable conclusion that the unfortunate and apparently ad-libbed statement of the district court concerning the "elements of state commerce" did not affect the outcome of the proceeding. The defense in the case was limited to identity. The factual issue of interstate commerce was covered by the stipulation. The issue of interstate commerce was not even addressed in the final arguments of counsel.

**V. The Claim of Prejudicial Errors during the Sentencing Phase of the Case**

**A. The Pre-Sentence Report's Mistaken Reference to a Guilty Plea**

The pre-sentence report calculated the total offense level at 28. After determining that the offense level was 20, two points were added for a threat of death, two levels for the bodily injury sustained by Freeman and the others in the Freeman residence, two levels for the physical restraint of Freeman and his relatives, and two levels for Potter's organizer/managerial role. Given the offense level of 28, with a Criminal History of III, the advisory guideline range was 97 to 121 months for Counts One and Two, plus a requirement of an additional 84 months to be served consecutively for the weapons violation in Count Three.

The pre-sentence report incorrectly stated that the first three enhancements were pursuant to a written guilty plea agreement. Potter attacks his sentence based on the incorrect report about a written guilty plea agreement. The attack is frivolous. No mention was made of the incorrect statement. The district court conducted an extensive sentencing hearing. A review of the record clearly indicates that he knew the guilty stance of the defendant resulted from the jury trial.

**B.     The Challenged Additional Two Levels for Potter's Organizer/Managerial Role**

Potter's trial counsel challenged the recommendation submitted in the pre-sentence report. However, Potter offered no testimony to support the challenge, but only the argument of his counsel. We find no error in the determination of the district court that Potter was the organizer of the criminal conduct. The challenge is rejected.

**C.     The Claimed Failure to Consider Sentencing Factors in 18 U.S.C. § 3553(a)**

Potter finally alleges that the district court failed to appropriately consider the §3553(a) factors and was, therefore, unreasonable. In order for us to find that a sentence was reasonable, the "record must demonstrate the trial court gave meaningful consideration to the 3553(a) factors" and that "those factors were reasonably applied to the circumstances of the case." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006). We do not require a rote statement that the district court has read *Booker* and understands the advisory nature of the guidelines nor a factor-by-factor analysis of the sentence under § 3553(a). *Id*. at 329. What we require is that the record demonstrate

13

careful consideration of the § 3553(a) factors and a sentence that reflects that consideration.

The sentencing hearing included testimony by Potter's father in support of a sentence of leniency. Additionally, Freeman and Urey testified as to the injuries received in the beatings inflicted by Potter, Ashmore and Hudgins during the morning of February 13, 2004.

The government argued for an upward variation from the sentencing guidelines. The district court then continued the sentencing until the next day when he imposed the sentence of 205 months. In the process, the district court recited his consideration of the sentencing factors in a complete fashion and, after reviewing the sentence, we find it to be a reasonable sentence within the advisory guidelines, which we find the district court correctly determined.

Finding no error, we will AFFIRM the judgment of the district court.